May it please the Court. I'm Robert Jobe and I'm appearing today on behalf of the Petitioner, Verinder Singh. I believe you had some law students appear in a case a couple of days ago that you had been involved in. An associate of mine, yes, Your Honor. That's correct. They did an excellent job. Well, good. I'm happy to hear it. The job they did does not necessarily mean the result. Dictate the result. But you should be proud of how they conducted themselves. Thank you, Your Honor. I appreciate that. For me, this is a very unusual case, because it's the first time in my 20 years of practice that I've seen an immigration judge completely ignore a government stipulation that an alien qualifies for asylum. You'll have to speak up just a little bit, Mr. Jobe. Yes, thank you, Your Honor. Is that the implication that we take where the government says we'll submit if it please the Court, and the I.J. said it doesn't please the Court? There's much more than that, Your Honor. Let me walk through it here. It begins on page 75 of the administrative record, and this is at lines 15 through 18. The immigration judge asks, are there any issues, stipulations of fact or law that I need to be aware of before we start? And the government attorney says, Your Honor, we would stipulate that he is statutorily eligible.  The judge cuts her off for what? To apply for asylum. And then she goes on to explain at that point, you know, the only issue that the asylum officer had relates to questions 18a, b, and c on the asylum application, and those relate to the Mr. Singh's date of entry. The conversation carries over onto the next page of the record, where the judge says you'll be able to question the applicant. This is at begins on page 76, line 15. You're going to be able to question him. He's talking about with regard to the date of entry. And then below that, the trial attorney says, lines 21 to 23, quote, and that's the only question that we have. Otherwise, we feel that he's entitled to asylum if he can just prove that. So, I mean, it's as clear as it can be, in my opinion, that the government stipulated right at the outset of the hearing that as long as he could demonstrate that he had filed his application within one year of entry, the government's view was that he was entitled to asylum. Then Counsel for Mr. Singh asked, well, then, Your Honor, should I direct my – should I cut my direct examination just to the one-year issue? And this is on page 77. And the judge, refusing to accept this stipulation from the government, says, well, sir, you'll – you'll present your case at whole, and during the presentation of your case, you're going to have to present – you're going to have to, I guess, meet all the evidence. So, I mean, the judge, notwithstanding the fact that the government had just said that if he – if this individual demonstrates that he filed his application within one year of entry, he's entitled to asylum, the immigration judge simply just rejected that. And we – we think that that rejection of the stipulation is inconsistent with this Court's decision in Urarakal. And that once the government stipulated that this individual – after reviewing the notes of the asylum officer, the assessment of the asylum officer, the reasons for the referral, the – after reviewing those documents, the government attorney had indicated that we thought – that she thought this individual qualified for asylum. And at that point, that issue should have been taken off the table. And under Urarakal, all that should have been left for the immigration judge to decide was whether Mr. Singh was deserving of asylum and the exercise of discretion. Now, the immigration judge ultimately concluded that Mr. Singh had failed to establish that he had suffered persecution that was on account of a protected ground. Now, if he accepted the government's stipulation, you know, we never would have gotten there. But on that point, the immigration judge was absolutely incorrect. And this is set forth on page 83 of the administrative record. This is the first arrest. And these facts are just simply ignored in the immigration judge's decision. He doesn't cite to any of the portions of the transcript that I'm going to walk through here. Page 83, beginning on line 14, he's asked – Mr. Singh has asked, what did the police say when they arrested you in June 1988? And then he says, you know, they're talking about at the moment of arrest, they said that you are a Khalistani, that you support militants, and most importantly, and also that you are trying to make a case against the police. Because he had been talking with a lawyer about filing a complaint against police for violating the human rights, in particular, of his nephew. He says, I was just in the process of thinking about it. Carrying on to the next page, and they say, this is at page 84, line 15, he's asked, well, what happened at the police station? At the police station, they asked about Darshan Singh. But down below that says, and they said, you are a Khalistani person and that you are going to make a complaint against the police, that we are going to teach you a lesson as to how you make a case against the police. I mean, it couldn't be more clear than that, that at least one of the reasons here for his arrest and the subsequent abuse in that first arrest was that he was contemplating filing a complaint against the police for human rights abuses, for having tortured his nephew. And certainly, criticizing the police or complaining against the police for engaging in human rights abuses, that's a core political activity. That's certainly a core political opinion. And it carries down again on to page 85, where he's talking about how they beat him with sticks, they pulled his legs open, they tied his hands behind his back and hung him upside down. He says they did this for a half an hour. And then he's asked, did they say anything to you while they were beating you? And he says, they said, this will be a good way to teach you a lesson because you're going to make a complaint against the police. I mean, just as they're torturing him, they're telling him, this is to teach you a lesson for thinking about filing a complaint against the police. That's direct evidence they were motivated at that point by his political opinion or his perceived opposition to the police and their conduct in committing human rights abuses. And the immigration judge mentioned none of that. I mean, obviously, the trial attorney at this case recognized that the persecution here was on account of political opinion, but the judge just missed it. And for those reasons, it's our view that the best way to dispose of this is to say that under Rarigal, the government's stipulation should have taken these issues out of play, and what should have remained for the immigration judge was to exercise his discretion, because I don't think the government can dictate to the judge ultimately how to exercise discretion. What's the remedy at this point, Mr. Chobh, if we agree with you? Renand back to the Board of Immigration Appeals, based on the stipulation that he meets the basic eligibility requirements for asylum, but that leaves open still the ultimate exercise of discretion. The case would have to go back to an immigration judge for the ultimate exercise of discretion. It won't go back to this judge, because this judge was a visitor. I don't even think he's from this circuit. That's part of the problem, I think, with the handling of this case. But ultimately, it's going to have to go back to another immigration judge so that he can exercise discretion on the application for asylum. Okay. I'll reserve the balance. Thank you. Mr. Nazaroff. May it please the Court. Ari Nazaroff. I'm from the U.S. Department of Justice, and I represent the Attorney General. Mr. Sin has not done the only thing he must do to prevail. Point to one piece of evidence that compels reversal. One piece of evidence. Wait, wait, wait. What about all the evidence in the record that the government was willing to stipulate that he was eligible for asylum? Why is that compelling? Well, Your Honor. Because you're not going to defend the Department's prior position before the I.J.? Well, that wasn't the position before the I.J., Your Honor. The reason that wasn't is it was a statement of deference. Counsel, I've only been on this Court for 5 years. I've never seen a statement like that before in a case. Well, as we pointed out in our brief, the statement that the trial attorney made was it's merely a statement of deference. The government simply informed the I.J. that they would not oppose his ruling. The I.J. is not bound by that. It looks a whole lot stronger than that, counsel. No, Your Honor. The issues that he raised on page 75 about the timely appeal. We would stipulate that he is statutorily eligible for asylum. Your Honor, that means that he was filed within one year. He also said that he could do that. That wasn't a limitation on the stipulation, was it? Your Honor, there was no stipulation. There was merely a statement of deference. Well, when you say we stipulate, that sounds to me like there's a stipulation. But all he said was he would not oppose the ruling from the immigration judge. It doesn't make sense that that would happen after an entire hearing. Your Honor, we would stipulate that he is statutorily eligible. We will. And the question is for what? To apply for asylum. The problem is this. The only issue that we had in the question was whether or not the application had been filed timely. Now, if that gets answered in Mr. Singh's favor, then what's left to decide? No, Your Honor. It is not answered in Mr. Singh's favor. An alien filing for asylum has to file within the year. In that statement also, on page 76, the government attorney says if he can prove that, if he can prove asylum, and he has not proved, he has not shown that the arrests in 98 and 99 are on account of a political opinion. They are on account of his knowledge of whereabouts of a legitimate criminal and part of a legitimate criminal investigation. Singh conceded that in the arrests in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, in 1998, Well, that's true, but that's not the case in this case, Your Honor, because Mr. Singh helped his cousin Darshan, who was a criminal sought by the Indian government three times before he was even arrested, three times over a period of four years. In 94, 95, and 97, there were never any problems. He indicated that when the police came to arrest him, they did it because they were looking for his cousin, who was wanted in connection with the bombing and weapons charges. And the political opinion that they keep bringing up, well, what is the political opinion? There have been two briefs filed. There's been a reply. What is the imputed political opinion that Darshan holds? What's a Khalistani? Khalistani, Your Honor, my understanding is that they – there's the talk of a separatist Singh movement.  They're a supporter of a separate Sikh state. Well, Your Honor – Aren't they? They appear to be. The thing is that – Are they supporters of a separate Sikh state? That's what – that's what opposing counsel claims. But, Your Honor – Okay. And he's called a Khalistani. Isn't that a political position? It is, Your Honor, but – Okay. So what more do we need? Well, because, Your Honor, it's unclear what – Do you simply ignore that? Well, Your Honor – That's what the IJ did. I don't know what the position of Darshan is, who is the basis of this criminal investigation. We don't care what the position of Darshan is, because it's not Darshan's case, is it? Well, it – Is it? It is Darshan, because it's his political opinion that's – No. Our petitioner claims it's been imputed. No. It's Mr. Varinder Singh's political opinion. He's called a Khalistani. Well, you – A Khalistani is a supporter of an independent state of Khalistan, a political position. Can the IJ simply ignore that? Well, Your Honor – Can the IJ simply ignore that? Did the IJ ignore that? No, he did not. What did he say about it? Well, it – What did he say about it? What did he say about it? You know, we have a hot bench in the Third Circuit. I hope you don't mind me bringing that up. Well, no. I'd like to ask you a question. Because the record indicates that these separatists are not persecuted in India. They're allowed – they're – He's called a Khalistani. That's your political position. You know, I think I have made my point clear. Well – I'm sorry. Supporters of Khalistan are not persecuted in India? They're not persecuted. They're leaders. Counsel, I'm just going to tell you, you're flat wrong. I have seen dozens of these cases over the past couple of years, dozens of them. I've only been on the bench for five years. Your Honor – We have granted a number of them in this circuit, and so I don't think that's a – I don't think the statement is true. Well, Mr. – Your Honor – Your position may be that not all Khalistanis are persecuted in India, and that would be a defensible position. Well – Well, Your Honor, I would say that the record supports that their leader, Mr. Mann, is able to travel freely, speak freely, that he's able to even introduce legislation. We have indicated that in our brief, that this is not – this is not a political case, Your Honor. This is on account of a legitimate criminal investigation. Mr. Darshan, the equivalent could be supporters of John McCain or Barack Obama blowing up buildings in downtown. We don't – we don't torture supporters of John McCain or Barack Obama. Right. But this criminal investigation and why Mr. Singh was arrested was also not on account of his separatist movement. He's arrested because of Darshan's criminal – criminal involvement in blowing up buildings. Counsel, I'd actually like to return to the question of what government counsel told the IJ. And if you'd turn to page 113 of the administrative record. On line 17, the IJ turns to government counsel after hearing a closing statement from – from Mr. Singh's counsel. It says, Counsel for the Government, do you have a closing statement? Answer, no, Your Honor. Question, what is your position on the case? Answer, we, if the court is inclined, we would not oppose. We would not oppose what? In closing argument, the government doesn't oppose? Your Honor, I wouldn't make a statement like that, but that's merely a statement of deference to the immigration judge. Whatever the situation is – We're not opposed to what? We're not opposed to whatever the IJ decides? Whatever the IJ decides. That's right, because – But the government didn't care whether he got asylum? The government wouldn't appeal if he got asylum? That's my understanding. And it wouldn't appeal if he – and it wouldn't – It's a deference to the – to the decision of the immigration judge. Opposing party has cited no legal case law or regulations that binds the IJ to accept the statement of – of – of – Again, Counsel, you know, I've never seen a statement like that in any case that's come before me. Well, that doesn't make it a stipulation. It's a pretty – Or a concession, Your Honor, because the – the evidence is clear in this case, that this is part of a legitimate criminal investigation into Darshan, who was blowing up buildings and running guns, and – I don't think I've ever seen a lawyer who came down to the end of his case and said I don't have a position on what the evidence shows. Well, Your Honor, maybe this case could have been litigated better downstairs – down there. But it's not a stipulation. Or he'd better own appeal, too. I'd just like to address the complaint against the police, Your Honors, on page 3. That has not been exhausted down below. On page 113 of that record, the only issue raised was the imputed political opinion. The complaint against – the only issue raised was the – there was no whistleblowing argument raised, and it was never raised to the Board on pages 12 to 31 of the record. So that issue is not before this Court. Again, Mr. Singh, Your Honors, was arrested in those two times on account of his relative's criminal activities as part of a legitimate government criminal investigation. Counsel, Mr. Singh testified that the police accused him of reporting on their activities. They accused him of supporting militants. They accused him of being a supporter of Khalistan. Now, did the I.J. enter any credibility findings? It's unclear. Well, if it's not clear which way in our circuit, which way does that cut? He would be credible. But, Your Honor, we did not argue credibility, but there are problems with his record. If he's credible, and he said he's – Well, it's unclear that he might not. He's introduced a medical exam, debated in 2003, that he got in 2003. Well, the medical exam – The I.J. didn't find him credible along those bases. We did not address credibility in the brief. Right. But – What are we supposed to do on appeal? Are we supposed to accept his credibility or not accept his credibility? Your Honor, I think in this case, you have to find that this – these arrests were not on account of imputed political opinion. These were on account of a legitimate criminal investigation. Even though the I.J. doesn't find him incredible and – Well, he questions his credibility. He testifies that the police were accusing him of being a supporter of Khalistan. Your Honor, I see my time is up. Again, the I.J. does not find him credible with respect to the medical – because he submitted a medical – Now, I admit the medical form is a little troubling. It is troubling. He's offered – he's offered an explanation. This is not a document of his creation. There's no final – that's a troubling piece of evidence in this case. And again, the stronger finding in this case that there was no – I mean, it appears that it's backdated, but Mr. Singh even appears to admit that the doctor backdated the – backdated the report. He conceded that he submitted a false piece of evidence. It's not a false piece of evidence. It's the doctor's – it's the doctor's report. He asked for the doctor's report. The doctor gave him a report. Backed – He appears that he backdated it. The English is – the explanation from Mr. Singh, again, something he apparently doesn't have control over, said that the educated classes often – often converse in English and the doctor wrote it in English. The English is not – is not particularly fluent. Your Honor, the evidence in this case does not – he has not shown one piece of evidence. This was not – he was not arrested on account of a – of a legitimate police investigation. I think we understand the government's position. Thank you very much. Mr. Chau. Just very briefly, Your Honor. The government says that the issue of whether Mr. Singh's first arrest was at least in part on account of his trying to file a complaint against the police wasn't raised at the board. That's just simply not true. If you look at page 21, this is the brief to the Board of Immigration Appeals. It says quite clearly, I mean, it's clearly raised at the Board of Immigration Appeals on page 21. This stuff that, you know, the Indian police don't target people who are sympathetic to the Khalistan movement, I guess I would direct you to page 340 of the Indian police cases. Yeah. This record says the second group of people targeted are young Sikh men suspected of collaborating with the militants or being sympathizers with the Khalistan movement. And that carries over onto the next page that says that the people who have pro-Khalistan opinions are particularly at risk. The government also says that Mr. – there was no stipulation as to that Mr. – that Mr. Singh filed within one year of his last entry, and that's just not true. Again, this is on page – let's see if I can go back here. Pages 111 and 112, Mr. Singh's counsel indicated that he was going to present a witness to talk about the exact date of Mr. Singh's entry. Instead, he made an offer of proof. The judge asked on page 112, counsel for the government, do you accept that? And she said, quote, I do, Your Honor. He submitted an affidavit. He said the government's not contesting that down below, and it appears that it was just simply uncontested. And the judge ultimately found in his decision that he'd file the application within one year of entry. So on that point, again, I think the government's just mistaken. Thank you very much. Thank counsel for the argument. Reverend Singh v. Mukasey is submitted. The next case is Haig v. Mukasey.
judges: Beezer, Roth , Bybee